IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES A. PUTTERS,

   Plaintiff,

      v.

RMAX OPERATING, LLC,

   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-3382-TWT

**OPINION AND ORDER**

This is a declaratory judgment action brought by the Plaintiff Charles Putters

against his former employer, the Defendant Rmax Operating, LLC. It is before the

Court on the Plaintiff's Motion to Dismiss the Defendant's Counterclaims [Doc. 30].

For the reasons set forth below, the Plaintiff's Motion to Dismiss the Defendant's

Counterclaims [Doc. 30] is GRANTED in part and DENIED in part.

**I. Background**

The Defendant (and Counter-Claimant) Rmax Operating, LLC is in the business

of manufacturing and selling insulation materials for buildings. (Countercl. ¶ 6.) The

Plaintiff (and Counter-Defendant) Charles Putters was employed with Rmax for

roughly twenty-six years as a sales manager. (Countercl. ¶ 7.) During his employment,

T:\ORDERS\13\Putters\mtdcounterclaimstwt.wpd

Putters had access to confidential information concerning Rmax's customers, pricing, and business strategy. (Countercl. ¶ 8.) Putters also had knowledge of "Rmax's proprietary work on wall insulation." (Countercl. ¶ 9.)

On August 8, 2013, Putters resigned from Rmax. (Countercl. ¶ 11.) His resignation became effective on August 9, 2013. (Countercl. ¶ 11.) Putters then began working for a competitor of Rmax, Atlas Roofing Corporation. (Countercl. ¶¶ 11, 13.) After his resignation, Putters returned his Rmax-issued computer and phone. (Countercl. ¶ 15.) Rmax then hired forensic computer experts to determine whether Putters had "unlawfully accessed or downloaded any of Rmax's confidential and proprietary information." (Countercl. ¶ 15.) Rmax was informed that Putters had downloaded documents containing proprietary and confidential information to an external hard drive. (Countercl. ¶ 16.) When confronted, Putters informed Rmax that he had destroyed the external hard drive after his resignation. (Countercl. ¶ 18.) Rmax alleges that the "confidential and proprietary information . . . that Putters . . . obtained . . . will give Atlas . . . a significant advantage in the insulation market." (Countercl. ¶ 21.)

Putters filed suit against Rmax seeking a declaratory judgment regarding the permissibility of his employment with Atlas Roofing and his remaining obligations toward Rmax. In response, Rmax asserted counterclaims for breach of fiduciary duty,

violation of the Georgia Trade Secrets Act ("GTSA"), and violation of the Georgia

Computer Systems Protection Act ("GCSPA"). Rmax seeks damages, attorneys' fees,

and injunctive relief. Putters moves to dismiss the counterclaims.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that

the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct.

1937, 1949 (2009); FED. R. CIV. P. 12(b)(6). A complaint may survive a motion to

dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff

would be able to prove those facts; even if the possibility of recovery is extremely

"remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling

on a motion to dismiss, the court must accept the facts pleaded in the complaint as true

and construe them in the light most favorable to the plaintiff. See Quality Foods de

Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989,

994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and

Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage,

the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all

that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753

F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice

pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim

and the grounds upon which it rests. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citing <u>Twombly</u>, 127 S.Ct. at 1964).

### III. Discussion

#### A. Breach of Fiduciary Duty

Rmax argues that Putters "breached his fiduciary duties by misusing and disclosing Rmax's confidential information and trade secrets." (Countercl. ¶ 27.) Specifically, Rmax argues that Putters had a duty to maintain the confidentiality of "information about Rmax and Rmax's employees, officers, customers, business contacts, and associates." (Rmax's Resp. to Putters' Mot. to Dismiss, at 19.) This claim is preempted by the GTSA. The GTSA "supersede[s] conflicting tort . . . and other laws of this state providing civil remedies for misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). This statutory language has been construed broadly. Thus, a tort claim is precluded so long as it "rel[ies] on the same allegations as those underlying the plaintiff's claims for misappropriation of a trade secret." <u>Robbins v. Supermarket Equipment Sales, LLC</u>, 290 Ga. 462, 466 (2012) (internal quotation marks omitted).

Here, Rmax's fiduciary duty claim is based on essentially the same allegations as its GTSA claim: that Putters acquired Rmax's confidential business information and disclosed it to Atlas Roofing. (Countercl. ¶ 31) (Rmax claims as trade secrets its

"pricing information, distribution channels and contacts, distribution pricing and incentive programs, strategic plans, marketing strategy, customer lists, financials, forms, and legal documents . . ..."). In response, Rmax argues that the breach of fiduciary duty claim does not rely on Putters' alleged disclosure of protected trade secrets, but rather on Putters' disclosure of other confidential information. This argument was addressed – and rejected – by the Georgia Supreme Court in Robbins. There, even though the confidential information did not qualify as a "trade secret," the court nonetheless found that the plaintiff's claim for relief was precluded by the GTSA. See Robbins, 290 Ga. at 466 ("The fact that the drawings were not ultimately found to be trade secrets under the act did not make the preemption clause inapplicable."). The court reasoned that, "[f]or the GTSA to maintain its exclusiveness, a plaintiff cannot . . . plead a lesser and alternate theory . . . simply because the information does not qualify as a trade secret under the act." Id. at 465; see also Professional Energy Mgmt., Inc. v. Necaise, 300 Ga. App. 223, 225 (2009) (The "purposes of the GTSA would be subverted if a plaintiff could state a claim for the misappropriation of proprietary information outside of the GTSA and thereby avoid its burdensome requirements of proof."); Diamond Power Intern., Inc. v. Davidson, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007) ("If a plaintiff could alternatively recover for misappropriation of non-proprietary information or

misappropriation of unguarded proprietary information, the legislative judgment contained in the GTSA - that such information should otherwise flow freely in the public domain - would be subverted."). Rmax "simply does not make any effort to distinguish the conduct or resulting injury on which it bases its trade secrets claim from the conduct or resulting injury on which it bases its fiduciary-duty claim," and so "it is superseded by the GTSA." Diamond Power, 540 F. Supp. at 1346.

## B. Georgia Trade Secrets Act

Rmax argues that Putters violated the GTSA by (1) accessing documents containing Rmax's confidential information after he resigned, and (2) disclosing Rmax's confidential information to Atlas Roofing. (Countercl. ¶ 32.) "To recover for misappropriation of trade secrets," the Plaintiff "must prove that (1) it had a trade secret as defined by OCGA § 10-1-761(4); and (2) [the Defendant] misappropriated that trade secret." Hilb, Rogal & Hamilton Co. of Atlanta, Inc. v. Holley, 284 Ga. App. 591, 597 (2007). "Misappropriation" is defined as: "(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) [under certain circumstances,] [d]isclosure or use of a trade secret of another without express or implied consent . . .." O.C.G.A. § 10-1-761(2).

Rmax's first claim – that Putters violated the GTSA when he allegedly accessed certain documents containing Rmax's trade secrets[1] – is without merit. Even assuming that Putters accessed these documents after his resignation, Rmax acknowledges that Putters initially *acquired* the alleged trade secrets during his employment. (Countercl. ¶¶ 8-9.) Rmax never alleges that Putters gained knowledge of any new trade secrets following his resignation. Consequently, Putters did not acquire any trade secrets using improper means, as required by O.C.G.A. § 10-1-761(2)(A). Cf. Onbrand Media v. Codex Consulting, Inc., 301 Ga. App. 141, 149 (2009) ("Even assuming that the Defendants did have knowledge of the Plaintiffs' trade secrets, there is no evidence that any such information was *obtained* in any way other than by voluntary disclosure by the Plaintiffs.").

Further, Rmax's second claim – that Putters violated the GTSA by disclosing certain trade secrets – also fails. Putters points out, correctly, that Rmax has failed to make a plausible allegation that he disclosed any of Rmax's confidential information to Atlas Roofing. To state a plausible claim for relief, Rmax must do more than show that there is "a sheer possibility that [Putters] has acted unlawfully." Iqbal, 556 U.S. at 678 (emphasis added). Rmax's counterclaim contains no more than a bare

---

[1] Specifically, Rmax alleges that Putters – after he had resigned – copied documents containing the trade secrets onto an external hard drive. (Countercl. ¶ 16.)

allegation that Putters disclosed protected information to Atlas Roofing. (Countercl. ¶ 32.) Although Rmax alleges that Putters may have possessed confidential information, this is "merely consistent with [Putters'] liability, [and] it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Thus, Rmax's conclusory allegation of disclosure is "not entitled to the assumption of truth." Id. at 679. Concluding otherwise could potentially impose the burdens of discovery on any employee that leaves a company for a different job – all because that employee had previously been exposed to confidential information. Accordingly, Rmax's GTSA claim should be dismissed.

### C. Georgia Computer Systems Protection Act

The GCSPA creates a right of action for computer theft against a "person who uses a computer or computer network with knowledge that such use is without authority and with the intention of . . . (1) [t]aking or appropriating any property of another . . .." O.C.G.A. § 16-9-93(a). The phrase "'[w]ithout authority' includes the use of a computer . . . in a manner that exceeds any right or permission granted by the owner of the computer or computer network." O.C.G.A. § 16-9-92(18).

Here, Rmax has stated a plausible claim under the GCSPA. Rmax alleges that Putters transferred documents from his company laptop onto an external hard drive,

(Countercl. ¶¶ 16, 41), that he knew he was not allowed to use his company laptop in this manner, (Countercl. ¶¶ 17, 42), and that he did it with the intention of appropriating particular Rmax documents. (Countercl. ¶ 42.) In response, Putters first argues that Rmax failed to sufficiently allege that Putters *knew* that he was using the computer in a manner exceeding the permission granted. (Putters' Mot. to Dismiss, at 13.) This is incorrect. Rmax alleged that it never gave Putters authority to copy documents from the company computer onto a personal hard drive, (Countercl. ¶ 17), and that Putters was aware of this. (Countercl. ¶ 42.) Rmax further alleges that, at the very least, Putters knew he did not have the authority to do this after he had already resigned.[2] (Countercl. ¶ 17.)

Putters then argues that Rmax failed to sufficiently allege that Putters used the computer "without authority." (Putters' Mot. to Dismiss, at 13-14.) Putters points out that he was allowed to access company documents while he was employed with Rmax. (Id.) This argument misunderstands Rmax's claim. Rmax alleges that even though Putters was permitted to access the documents during his employment, he was never allowed to use his company computer in the manner he did: to copy documents

---

[2] This also answers Putters' argument that Rmax failed to sufficiently allege that Putters used the company computer with the intention of appropriating Rmax's property. Rmax alleges that Putters intended to copy Rmax files onto an external hard drive. (Countercl. ¶ 42.)

onto a personal hard drive. (Countercl. ¶ 17.) In that respect, this case is similar to

DuCom v. State, 288 Ga. App. 555 (2007).[3] There, the defendant had copied company

software and documents onto a personal disk before leaving the company. See id. at

558 ("The State's computer experts testified that DuCom copied a 'massive' amount

of information from C & D's hard drive onto disks . . ..."). The defendant "was not

authorized to use [company] computers for her personal use," and employees were

"not permitted to copy [software from the company computers] for use outside the

office." Id. at 557. The court found that these facts were sufficient to establish that the

defendant "used a computer, owned by her employer . . . without authority . . .." Id.

at 563. Additionally, as noted earlier, Rmax alleges that Putters used the company

laptop after he had resigned, (Countercl. ¶ 21), and that he did not have permission to

do so. Accordingly, Putters' Motion to Dismiss Rmax's GCSPA claim should be

denied.

---

[3] Although DuCom v. State is a criminal case, it dealt with the same statute. A violation of O.C.G.A. § 16-9-93(a)(1) may give rise to both criminal *and* civil liability. See O.C.G.A. § 16-9-93(g)(1) ("Any person whose property or person is injured by reason of a violation of any provision of this article may sue therefor and recover for any damages sustained . . .."); Sitton v. Print Direction, Inc., 312 Ga. App. 365, 367 (2011) ("The criminal offenses of computer theft . . . [is] set forth in OCGA § 16-9-93, which also provides for . . . a civil remedy.").

## IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the

Plaintiff's Motion to Dismiss the Defendant's Counterclaims [Doc. 30].

SO ORDERED, this 14 day of April, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge